IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VENTURELINK HOLDINGS, INC., et al., | § | |
| | § | |
| Appellants, | § | |
| v. | § | Civil Action No. 3:05-CV-2103-L |
| | § | |
| KIRKPATRICK & LOCKHART, L.L.P., | § | |
| | § | |
| Appellee. | § | |

**MEMORANDUM OPINION AND ORDER**

This action is an appeal of a Final Judgment entered by the bankruptcy court on September 8, 2005 in favor of Defendant and Appellee, Kirkpatrick & Lockhart, L.L.P. (hereinafter "K&L" or "Creditor").  Appellants Venturelink Holdings, Inc., Pacific USA Holdings Corporation, PUSA Investment Company, Pacific Realty Group, Montford Limited, Austways Services Limited, Top Target Limited, Berger Systems Limited, and Elam Investment Limited, Chapter 11 debtors, (sometimes hereinafter referred to collectively as, "Debtors,"  "Appellants," or "PUSA") appeal from a summary judgment order denying their attempt to avoid a pre-petition payment of $1 million to creditor K&L, as being an 11 U.S.C. § 547(b) preference.  K&L successfully urged in the bankruptcy court that the transfer was not a transfer of an "interest of the debtor in property" (*see* 11 U.S.C. § 547(b)), and thus no preference could have occurred as a matter of law.  The question on appeal is whether the bankruptcy court erred in finding as a matter of law that PUSA failed to raise a genuine issue of material fact regarding the transfer because it incorrectly discounted summary judgment evidence presented by PUSA and impermissibly resolved inferences in the evidence in favor of K&L, the movant, rather than PUSA, the nonmovant.  Having reviewed the

bankruptcy court's decision, the record on appeal, the parties' legal briefing and applicable law, the court concludes that the bankruptcy court improperly granted judgment as a matter of law to K&L. Accordingly, the court **reverses** the order of the bankruptcy court granting judgment in K&L's favor, and **remands** this adversary proceeding for further proceedings consistent with this opinion.

## I.      Factual and Procedural Background

The material facts are substantially undisputed.  K&L acted as legal counsel to PUSA prior to PUSA filing for Chapter 11 protection.  In order that PUSA might retain K&L as its bankruptcy counsel after it filed for Chapter 11 relief, PUSA sought to pay legal fees it owed K&L.[1]  As PUSA did not have adequate resources available to pay K&L, on November 14, 2002 (eighteen days prior to PUSA's bankruptcy filing), PUSA's parent company, Pacific Electric Wire & Cable Co. Ltd. ("PEWC"), wire transferred $1 million directly to K&L to pay PUSA's outstanding legal bills to K&L.  The parties stipulated to the follow facts:

1.      The PEWC wire transfer was not made by any of the Debtors; rather, it was made out of non-debtor funds directly by PEWC, which is neither a plaintiff nor a debtor in the bankruptcy case;

2.      The Debtors never had possession of the funds constituting the PEWC wire transfer; and

3.      The PEWC wire transfer did not flow through any of the Debtors' bank accounts.

On or about December 2, 2002, PUSA filed for Chapter 11 protection.  PEWC booked the transfer as a loan to PUSA.  PUSA booked the transfer as "additional paid-in capital."  Following a year-end audit, the accounting between PUSA and PEWC was reconciled and the transfer was

---

[1]Pursuant to 11 U.S.C. § 101(14), if K&L was a prepetition creditor of PUSA, it would not be a "disinterested person," and could not have been retained as counsel for the soon-to-be debtor PUSA.

**Memorandum Opinion and Order - Page 2**

booked as a loan to PUSA on PUSA's books.  In December 2004, PUSA commenced this adversary proceeding against K&L to avoid the $1 million payment as being a preferential transfer under 11 U.S.C. § 547(b).  In due course, K&L filed a summary judgment motion, claiming that no preferential transfer occurred as a matter of law since PUSA never had access to, discretion over or control of the funds wire transferred directly from PEWC to K&L, and that PUSA could not have used these funds to pay its other creditors or to support its general operations.[2]  In short, K&L argued that the $1 million transferred from PEWC to K&L was not "an interest of the debtor in property," and therefore, could not be recovered as a preference under 11 U.S.C. § 547(b).  In response, PUSA contended that there was a material issue of fact regarding whether the transfer was a transfer of an interest of PUSA in property.  The bankruptcy court conducted a hearing on K&L's summary judgment motion on August 3, 2005, and issued its Memorandum Opinion and Order containing the court's findings of fact and conclusions of law on August 25, 2005 and its Final Judgment on September 8, 2005.  The bankruptcy court granted summary judgment for K&L holding that PUSA failed to raise a genuine issue of material fact regarding its interest in the funds transferred to K&L by PEWC.  Specifically, the bankruptcy court examined the evidence and held that:

> [B]ecause Plaintiffs failed to raise a genuine issue of material fact regarding [their] control over the funds transferred by PEWC to K&L, no interest of PUSA in property was transferred, and no preference payment to K&L was made as a matter of law. Accordingly, K&L is entitled to summary judgment on Plaintiffs' preference claim.

---

[2]K&L also moved for summary judgment on its contention that any recovery in the adversary proceeding would not benefit PUSA's bankruptcy estate.  *See* Mem. Op. & Order at 15.  The bankruptcy court denied K&L's summary judgment motion on this ground, and it is not now before this court on appeal.

**Memorandum Opinion and Order - Page 3**

Mem. Op. & Ord. at 16.  The bankruptcy court thus concluded that the $1 million payment to K&L could not be avoided under section 547(b).  From this order granting summary judgment PUSA appeals.

## II.      Issue Presented

The issue presented on appeal is whether the bankruptcy court erred in finding as a matter of law that PUSA failed to raise a genuine issue of material fact regarding the transfer because it incorrectly discounted summary judgment evidence presented by PUSA and impermissibly resolved inferences in the evidence in favor of K&L, the movant, rather than PUSA, the nonmovant.

## III.     Standard of Review

On appeal before the district court, "[a] bankruptcy court's findings of fact are subject to clearly erroneous review, while its conclusions of law are reviewed de novo."  *In the Matter of Pro-Snax Distributors, Inc.*, 157 F.3d 414, 420 (5th Cir. 1998).  Fact findings are reversed only if, based on the entire evidence, the court is left with a definite and firm conviction that a mistake has been made.  *In the Matter of Young*, 995 F.2d 547, 548 (5th Cir. 1993).  In this appeal, Appellants contend that the bankruptcy court misapplied the law pertaining to summary judgment, and impermissibly viewed the facts in the light most favorable to the movant, K&L, rather than the nonmovant, PUSA. Accordingly, the court's review will be *de novo*.

## IV.     Analysis

### A.      Section 547(b)

A brief understanding of the law pertaining to preferences under 11 U.S.C. § 547(b) is in order to fully understand the bankruptcy court's decision and the parties' arguments on appeal. Pursuant to 11 U.S.C. § 547(b), bankruptcy trustees are authorized to "avoid any transfer of an

interest of the debtor in property" when certain conditions are satisfied.  The elements of a voidable

transfer are that it: (1) benefit a creditor; (2) be on account of antecedent debt; (3) be made while

the debtor is insolvent; (4) be made within 90 days before bankruptcy; and (5) enable the creditor

to receive a larger share of the estate than if the transfer had not been made.  *See* 11 U.S.C. § 547(b);

*In re El Paso Refinery, L P*, 171 F.3d 249, 253 (5ᵗʰ Cir. 1999).  As stated by one judge in this district:

> A preference is any transfer of a bankrupt's property within a
> prescribed period of time while the bankrupt is insolvent if its effect
> is to enable one creditor to obtain a greater percentage of his debt
> than other creditors of the same class. The essence of a preference is
> that it depletes or diminishes the estate of the bankrupt that is
> available for distribution to the other creditors.  The basic goal of the
> Code with respect to preferences is to secure equal distribution of the
> debtor's assets among his creditors and to prevent favoritism. . . . The
> preference provision is also intended to discourage creditors from
> racing to the courthouse to dismember the debtor during his slide into
> bankruptcy.

*Cimmaron Oil Co., Inc. v. Cameron Consultants, Inc.*, 71 B.R. 1005, 1011 and n. 10 (N.D. Tex.

1987) (Fitzwater, J.) (internal citations omitted).  "[T]he primary consideration in determining if

funds are property of the debtor's estate is whether the payment of those funds diminished the

resources from which the debtor's creditors could have sought payment."  *In re  Southmark Corp.*,

49 F.3d 1111, 1116 (5ᵗʰ Cir. 1995).  In *In re Southmark*, the Fifth Circuit set forth the test to

determine whether funds transferred are property of the debtor's estate:

> If the debtor determines the disposition of funds from the third party
> and designates the creditor to be paid, the funds are available for
> payment to creditors in general and the funds are assets of the estate.
> In this event, because the debtor controlled the funds and could have
> paid them to anyone, the money is treated as having belonged to her
> for purposes of preference law whether or not she actually owns it.

*Id.* at 1116-17 n. 17 (quoting 1 David G. Epstein et al., Bankruptcy § 6-7, at 522 (1992)).  In a

situation where a debtor never physically controls of owns the disputed funds, a preference is less

likely to arise.  *See Coral Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351 (5th Cir. 1986)

(upholding summary judgment in favor of preference defendant where fund that went to alleged

preference creditor was already pledged by a subsidiary of the debtor as collateral to a bank, which

had total control of funds, along with rights of pledge and offset).

### B.     The Summary Judgment Evidence

Evidence presented by K&L in support of its summary judgment motion included the

Declaration of Tom C.Y. Tung ("Tung Declaration") and the Declaration of Jack Takacs ("Takacs

Declaration").  Tung was the President and Chairman of PEWC at the time of the transfer and the

Chairman of PUSA.  Takacs was the CEO of PUSA at the time of the transfer.  With regard to the

$1 million wire transfer from PWEC to K&L, Tung stated that "[a]t no time did PUSA have control

of these funds[.]"  Takacs states that "[t]his payment was not at the direction and instruction of

PUSA."

To defeat K&L's summary judgment motion, PUSA relied on the deposition testimony of

Mike McGraw ("McGraw"), PUSA's President and CFO at the time of the transfer, and of Andy

Cheng ("Cheng"), an Executive Vice President and director of PEWC at the time of the transfer.

McGraw testified that beginning in 2001 until it filed for bankruptcy in 2002, PUSA had trouble

meetings its obligations as they came due, and relied on PEWC to fund its operation by, among other

methods, wiring funds directly to PUSA, remitting funds directly to vendors or creditors, or

remitting funds to vendors and creditors through a line of credit that PEWC had with another

company.  *See* Appellants' Record on Appeal, Vol. 3, pp. 142-43, 152-53.  Regarding the frequency

of these payments, he stated that the "payments were infrequent," and then stated they were "made

just often enough to, you know, keep us on life support."  *Id.* at 152.  Describing the  way in which

such payments were made "more often than not," McGraw testified that Takacs, the CEO of PUSA, worked to arrange the funding with Tung; (2) McGraw then prepared schedules with debts to be paid, which Takacs would then present to PEWC (or which McGraw would send directly to Tung); (3) the funding provided by PEWC was based on the schedule prepared by McGraw; (4) PUSA had "some discretion" to replace creditors on the schedule with other creditors if it desired; (5) K&L worked with Takacs to arrange for payment of K&L's billings; and (6) PEWC determined the allocation of payments based on recommendations from McCraw and Takacs and, to McGraw's knowledge, none of the "recommendations" was ever rejected.  *Id.* at 152-53, 156, 158, 160.

Cheng testified in his deposition that: (1) PUSA, the U.S. operation, kind of [ran] by itself" and that "[n]obody really watch[ed] over PUSA because at that time Tom Tung, the president was, you know, watch[ing] over us[]"; and (2) the PEWC Board of Directors did not even find out about the payment of expenses and debts of PUSA until sometime around 2003.  *Id.* at 241.

### C.    The Parties' Contentions on Appeal

Appellee K&L contends that the undisputed facts in this case establish as a matter of law that the PEWC transfer to K&L was not a "transfer of an interest of the debtor in property." Specifically, Appellee K&L relies on the stipulation of the parties and the Declarations of Tung and Tacaks, stating that the "Debtors have stipulated that the PEWC Wire Transfer was not made by any of the Debtors, that PEWC made the wire transfer from its own funds, that PEWC made the wire transfer directly to [K&L], and that the funds in question did not flow through any of the Debtor's bank accounts."  *See* Appellee's Brief at 3.  Appellants argue in response that the undisputed facts recited by K&L are not dispositive of the preference issue.  According to PUSA, the "dispositive issue is who controlled the payment; that is PUSA or PEWC."  *See* Appellants' Reply Brief at 1.

PUSA argues that it has raised a genuine issue of material fact "as to whether PUSA or PEWC controlled the payment made to K&L" and that "[a]s a result, the Bankruptcy Court improvidently granted summary judgment in favor of K&L." *Id.* at 2. Further, PUSA contends that the bankruptcy court reached its decision granting summary judgment for K&L because it "improperly discounted summary judgment evidence presented by PUSA, which was primarily in the form of the depositions of Mike McCraw and Andy Cheng." *Id.*

    **D.**    **Discussion**

        **1.**    **The Bankruptcy Court's Decision**

In reaching its decision to grant K&L's summary judgment motion, the bankruptcy court found that McGraw's testimony was not helpful to PUSA, who had the obligation to raise a genuine issue of material fact regarding PUSA's control over funds transferred to K&L. The bankruptcy court found that McGraw never linked the creditors' schedule preparation and the payment process about which he had testified to the actual transfer to K&L. *See id.* The bankruptcy court also concluded from various portions of McGraw's deposition testimony that he had no personal knowledge about the specifics of the transfer to K&L. As an example, the bankruptcy court pointed out that although McGraw testified that PEWC paid expenses of PUSA from time to time, he characterized those payments as "infrequent." *Id.* at 8-9. In addition, the bankruptcy court notes that when asked whose decision it was to make payments to PUSA's creditors, McGraw testified that he "believed" that Takacs worked directly with Tung to arrange for the necessary funding, but also stated that he didn't know "any of the specifics" beyond that. *Id.* at 9. With regard to PUSA's discretion to substitute creditors from those on the funding schedule, the bankruptcy court noted that McGraw testified that PUSA "desperately tried to . . . stick to the schedule. Now, if in the meantime

another creditor – well, I guess you could say that there was some discretion, because it was the creditors who presented the biggest threat to the operation . . . that we tried to make sure got paid." *Id.*

As to Cheng's testimony that PEWC did not even know about the fund transfer until sometime in 2003 (indicating that Tung failed to get PEWC approval for the $1 million transfer and was therefore more likely acting on behalf of PUSA), the bankruptcy court discounted this testimony, finding that there is "no evidence to suggest that Tung needed PEWC board approval of his decision to loan money to PUSA" and that  "there is no evidence in the record to suggest that Tung was acting as Chairman for PUSA when he made the decision to pay K&L's outstanding legal bills." *Id.* at 11.  The bankruptcy court further stated: "In fact, if he was acting as PUSA's Chairman when he made the decision to transfer $1 million to K&L, who authorized the transfer on PEWC's behalf?" *Id.* at 11-12.

Based on this review of the evidence, the bankruptcy court granted summary judgment for K&L holding that PUSA failed to raise a genuine issue of material fact regarding its interest in the funds transferred to K&L by PEWC.  Specifically, the bankruptcy court held that:

> [B]ecause Plaintiffs failed to raise a genuine issue of material fact regarding Plaintiffs' control over the funds transferred by PEWC to K&L, no interest of PUSA in property was transferred, and no preference payment to K&L was made as a matter of law. Accordingly, K&L is entitled to summary judgment on Plaintiffs' preference claim.

*Id.*  at 16.  As the $1 million payment to K&L could not be avoided under section 547(b), the bankruptcy court thereafter issued a Final Judgment dismissing this adversary proceeding.

### 2.    Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Id.* When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### 3.    Analysis

The court determines that under this standard, the bankruptcy court impermissibly viewed the evidence in the light most favorable to K&L, and not PUSA. Instead of taking the evidence propounded by PUSA as true, the bankruptcy court weighed it against the Tung and Takacs Declarations. The court agrees with PUSA's argument on appeal that, viewing the evidence in the light most favorable to PUSA, and drawing all inferences in PUSA's favor, as the court must at this juncture, McGraw's and Cheng's respective deposition testimony raises a genuine issue of material

fact as to the key issue presented in this adversary proceeding to void a preferential transfer under

section 547(b), namely, whether PUSA or PEWC controlled the payment to K&L.  As case law from

this circuit makes clear (*see supra*), if the evidence shows that PUSA had the discretion to designate

the creditor to be paid and to determine the disposition of funds from the third party, then the funds

"are available for payment to creditors in general and the funds are assets of the estate . . . whether

or not [the Debtor] actually owns [the funds]."  *In re Southmark*, 49 F.3d at 1116-17 n.17 (citation

omitted).

It is undisputed that Tung was the Chairman of both PUSA and PEWC (although in his

Declaration Tung only states that he is Chairman of PEWC).  From the fact that Tung wore two hats,

a genuine issue of material fact arises as to whether Tung was acting on behalf of PUSA as its

Chairman when he set up the transfer to K&L (rather than acting on behalf of PEWC).  Cheng's

testimony that the PEWC Board did not even know about the transfer is also evidence from which

a jury could infer that Tung was acting on behalf of PUSA.  *See generally Matsushita Elec. Indus.,*

475 U.S. at 587 (court required to view all inferences drawn from the factual record in light most

favorable to nonmoving party); *Ragas,* 136 F.3d at 458 (same).  Resolving the issue in favor of

K&L, the bankruptcy court concluded, "there is no evidence in the record to suggest that Tung was

acting as Chairman for PUSA when he made the decision to pay K&L's outstanding legal bills."

Mem. Op. & Ord. at 17.  The bankruptcy court further stated: "In fact, if he was acting as PUSA's

Chairman when he made the decision to transfer $1 million to K&L, who authorized the transfer on

PEWC's behalf?"  *Id.* at 17-18.  These questions are more properly left for the jury.

Further, from the deposition testimony of McGraw, a reasonable juror could conclude that

"more often than not," McGraw, as PUSA's CFO, would prepare a schedule listing creditors and

vendors PUSA needed paid, then take that list to PEWC, which paid the creditors designated by PUSA, and not PEWC.  *See* Appellants' Record on Appeal, Vol. 3, pp. 152-53, 156, 158, 160. McGraw's testimony, viewed in the light most favorable to PUSA (the nonmoving party), is that PUSA as a general matter had discretion to pay other creditors than those on the schedule.  *Id.* at 153, 158, 160.  As PUSA correctly argues on appeal, under *In re Southmark*, *supra*, the relevant inquiry is not who actually made the payment to K&L or whether the money ever transferred in or out of PUSA's bank accounts, but whether the original instruction and designation of K&L as a creditor to be paid came from PUSA *via* a schedule of accounts to be paid prepared by McGraw and directed by Tacaks.  That McGraw stated he "believed" this happened in this particular instance of the $1 million wire transfer to K&L, and that payments by PEWC of PUSA's expenses happened "infrequently," goes to the weight a jury would assign the testimony, and not its admissibility.  As stated in Fed. R. Evid. 406: "Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."  Otherwise stated, although McGraw could not state with certainty that PUSA followed the usual methods he described as to this particular payment, under Rule 406, his testimony regarding the practice followed "more often than not" is relevant to a determination that he acted in conformity with prior practices during this particular transaction.

In sum, from a close examination of the deposition testimony of McKay and Cheng, and keeping in mind the standards which govern a court's review of summary judgment evidence, the court concludes that the bankruptcy court improperly resolved factual inferences in favor of K&L. After viewing all the evidence in the light most favorable to PUSA, PUSA has raised a genuine issue

of material fact as to whether PUSA in its discretion designated the creditor to be paid (K&L) independently of PEWC and as to whether Tung was acting as Chairman of PUSA when he caused $1 million of PEWC's funds to be wire-transferred to K&L.  If these facts are true, which the court must assume they are on summary judgment, a reasonable juror could determine that the $1 million was a transfer of property of the estate, and accordingly a voidable preference under section 527(d).

## V.        Conclusion

For the reasons stated herein, the decision of the bankruptcy court granting judgment as a matter of law in favor of Appellee K&L is **reversed**.  This adversary proceeding is **remanded** to the bankruptcy court for further proceedings consistent with this memorandum opinion and order.

**It is so ordered** this 2nd day of October, 2006.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order - Page 13**